IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      CRIMINAL ACTION NO. 2:14-cr-00109

GARY L. ROEHER,

    Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

Because of the unusually low guidelines and the exceptionally high degree of acceptance of responsibility, of substantial assistance and of other mitigating factors, counsel respectfully submits a sentence of probation is appropriate in this case.

### A.    ROEHER'S SUBSTANTIAL ASSISTANCE WARRANTS PROBATION.

Counsel will trust government counsel to provide the court the details of Mr. Roeher's assistance. Counsel requests that the Court hold an *in camera* hearing during the sentencing hearing on October 9, 2014 to learn the full extent of such assistance. As the Court has already heard, Mr. Roeher and his business partner authorized counsel to contact federal authorities immediately to cooperate fully with them. Counsel got the call on a Friday and the meeting took place for several hours two days later on a Sunday. Rarely has the government obtained such extensive and effective assistance which has resulted, in significant part due to Mr. Roeher's assistance, in a host of successful prosecutions and ongoing investigations.

### B.    THE NATURE OF THE OFFENSE AND DEFENDANT'S HISTORY AND CHARACTERISTICS WARRANT PROBATION

The Court is fully aware of the significance and the dictates of Gall v. U.S., 552 US. 38 (2007), and related cases. But what sometimes gets missed in Gall is the fact that with a 30 to 37 month guidelines range involving a drug conspiracy, a district judge sentenced Gall to probation where there was no substantial assistance motion made. Courts have commented that Gall and

Booker finally made possible "the authority of district judges to engage in individualized sentencing." U.S. v. Vonner, 516 F.3d 382, 392 (6th Cir. 2008); U.S. v. Whitehead, 532 F. 991, 994 (9th Cir. 2008). Moreover, Gall breathed life into Congress's express intent in 25 USC § 994 (j) that the "Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense...."

Naturally, any felony conviction can be considered "serious;" a felony surely has serious consequences for a defendant such as Mr. Roeher, which is addressed below. But a tax violation in monetary range in Mr. Roeher's case is not particularly serious especially when compared to other cases typically seen in federal court. Accordingly, Mr. Roeher's case falls within the kind of case Congress considers appropriate for a sentence of probation.

Several mitigating factors, of the kind described in Gall, exist in this case and are listed below:

1) This was Mr. Roeher's first offense. He has no criminal record and the Gall Court made note of the importance of considering how consistent and for how long a defendant has lived in a law-abiding manner. One district judge has noted that 18 USC 3553(a)(1) obliges courts to consider a defendant's character, and held that in "cases where the defendant led an otherwise praiseworthy life, the court should consider a sentence below the advisory range." U.S. v. Wachowiak, 412 F. Supp.2d 958 (E.D. Wisconsin. 2006), aff'd 496 F.3d 744 (7th Cir. 2007).

2) His conviction is for a tax violation and thus no violence was involved[1].

3) Mr. Roeher is a good parent who is "fathering" his grandchildren, as reflected in the moving and precious letter written by his wife. In U.S. v. Pauley, 511 F.3d 468, 474 (4th Cir. 2007), the Fourth Circuit approved a downward variance in part because the defendant was a "good parent" which was a valid consideration under Section 3553(a).

---

[1] As this Court recalls, Counsel argued for probation for a first-time "white collar" criminal in another case, but counsel failed to adequately explain that it is not the "white collar" nature which is important, but the status of being a first-time offender and the non-violent nature of the crime itself. In U.S. v. Germosen, 473 F. Supp.2d 221, 227 (D.Mass. 2007), the Court sentenced below the guideline range as it held that "there is a demonstrable difference in the recidivism rates of real first offenders as compared to other defendants." Moreover, in state courts, whether involving blue collar or minority defendants, it has been counsel's experience that first time offenders of property crimes, including even defendants guilty of the more "serious" crime of breaking and entering, are invariably placed on probation. Counsel attempted to find statistics to corroborate his experience but was unable to do so, but in speaking to a knowledgeable local probation officer, he learned that a sentence other than probation is definitely very rare.

2

4) Mr. Roeher has great family support.

5) Mr. Roeher has great community support, as evidenced by the several letters attached.

6) Mr. Roeher is a generous, mentoring coach of young kids who has enabled many kids and families to travel out of state to play games; kids to have uniforms, and kids to eat meals, etc., as reflected in the powerful letters provided.

7) Mr. Roeher has paid in full his forfeiture and restitution amounts; he actually paid more to the IRS than the amount listed in the plea agreement.

8) Mr. Roeher has already suffered serious consequences. A felony conviction leaves a stigma which is permanent and pervasive. Sometimes courts do not fully appreciate the "anguish and penalty and the burden persons face" when convicted of a felony. U.S. v. Prosperi, 686 F. 3d 32 481st Cir. 2012). The Prosperi Court affirmed a district judge who sentenced two defendants to six months home confinement, three years probation and 1,000 hours of community service for a serious mail fraud scheme with an 87 to 108-months incarceration guideline range. Further, "a felony conviction irreparably damages one's reputation." U.S. v. Wolff, 758 F.2d 1121, 1125 (6th Cir. 1985). For Mr. Roeher, his conviction has resulted in the complete collapse of his businesses, the loss of his sales job and the loss of his home. Sometimes one suffers humiliation and embarrassment in a more direct and public way. For example, recently Mr. Roeher was jeered during a youth basketball game by a parent of an opposing AAU team player who yelled from the stands that the Logan team was coached by "a convicted felon."

9) Incarceration is not necessary to protect the public as Mr. Roeher poses no danger to the community. In U.S. v. Edwards, 595 F.3d 1004, 1016 (9th Cir. 2010), the Court powerfully noted that "Section 3553(a), for instance, does not require the goal of general deterrence be met through a period of incarceration." Further, the Court quoting legislative history concluded that it "may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." Id. at fn. 9.

10) Mr. Roeher has demonstrated what might be termed, "Extraordinary Acceptance of Responsibility." He confessed and cooperated immediately, paid his forfeiture amount in full, paid up all back taxes and sold his home so he could pay his bills. Furthermore, when he started a pump business with Mr. Herndon, he and Herndon refused to make any kickback payments. In a false tax return case, where the guideline range was 10-16 months, the Court in U.S. v. Gardenelli, 545 F.3d 1089 (D.C. Cir. 2008), affirmed a district court's sentence of probation because the defendant had fully cooperated with authorities and had accepted responsibility "to an extraordinary degree." Id. at headnote 1.

11) Given his age and limited job experience Mr. Roeher, by virtue of his felony conviction, is virtually unemployable.

3

12) Regarding the underlying Crib Block Kickback Scheme, the details of which Roeher explained to the government during his initial interview and which are set out in the Stipulation of Facts, the real culprits in this scheme were Arch employees and not Roeher[2]. In fact, Roeher found an excellent source for crib blocks and was informed that he was providing Mountain Laurel with the lowest prices at any Arch Coal facility in their national system. Roeher was paying the kickbacks out of his profits, and thus, was not jacking up his invoices to cover the payments he was required to pay to keep his crib sales going. Moreover, Roeher was a bit of an easy mark for not only the two huge, imposing body-building types like Lusk and Miller, but also for hourly workers who led him to believe that if he did not give them tickets and miscellaneous gifts, he would lose business with Arch. His bi-polar disorder, which includes periods of severe anxiety and paranoia, may have contributed to his fears and him being such an easy target. His remorse was immediate, genuine and profound and is is eloquently expressed in his statement contained in his presentence report.

## CONCLUSION

In summary, Mr. Roeher is a good man, has demonstrated extraordinary acceptance of responsibility and provided substantial assistance while suffering very severe consequences for his crime. As a first-time offender of a non-violent crime, and for the many reasons listed above, a sentence of probation would be most appropriate.

Respectfully submitted.

GARY ROEHER
By Counsel

---

[2] In Gall, the Court found the sentence of probation "reasonable" citing language from the district judge who stated that "a sentence of imprisonment may work to promote not respect, but derision, of the law if viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved." Id. at p. 54. Counsel submits that Mr. Roeher and others were particularly vulnerable to being coerced into going along with Arch's employees extortion schemes as Arch was virtually the only "game in town." The status of the coal industry in Southern West Virginia was such that a vendor either went along with the extortion or lost his business. Counsel submits that our criminal justice system should not be too judgmental, in the negative connotation of that term, or too self-righteous as mortgage debts, family livelihood and the jobs and livelihoods of employees were truly on the line.

4

/s/ J. Timothy DiPiero
J. Timothy DiPiero (WVSB# 1021)
DiTrapano, Barrett, DiPiero, McGinley & Simmons, PLLC
P.O. Box 1631
Charleston, West Virginia 25326
(304) 342-0133 (telephone)
(304) 342-4605 (facsimile)
E-Mail: Tim.DiPiero@dbdlawfirm.com

# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                             CRIMINAL ACTION NO. 2:14-cr-00109

GARY L. ROEHER,

    Defendant.

## CERTIFICATE OF SERVICE

I, J. Timothy DiPiero, do hereby certify that a true and correct copy of the foregoing **DEFENDANT'S SENTENCING MEMORANDUM** was served upon the following counsel of record by electronic filing, this 6th day of October, 2014 and addressed as follows:

    Merideth George Thomas
    Assistant United States Attorney
    300 Virginia Street, East
    Room 4000
    Charleston, WV 25301
    meredith.thomas@usdoj.gov

                                /s/ J. Timothy DiPiero
                                DiTrapano, Barrett, DiPiero, McGinley &
                                Simmons, PLLC
                                P.O. Box 1631
                                Charleston, West Virginia 25326
                                (304) 342-0133 (telephone)
                                (304) 342-4605 (facsimile)
                                E-Mail: Tim.DiPiero@dbdlawfirm.com